1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11    STANLEY V. WELLS,                      Case No. 1:22-cv-00205-KES-CDB (PC)

12              Plaintiff,                   **FINDINGS AND RECOMMENDATIONS
                                             TO GRANT DEFENDANT'S MOTION**
13         v.                                **FOR SUMMARY JUDGMENT**

14    LIMA,                                  (Doc. 41)

15              Defendant.                   **14-DAY OBJECTION PERIOD**

16

17         Stanley V. Wells is a state prisoner proceeding pro se and *in forma pauperis* in this civil

18    rights action filed pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's Eighth

19    Amendment claim against Defendant Lima.

20    **I.      INTRODUCTION**

21         Defendant Lima filed a merits-based motion for summary judgment on January 23, 2025.

22    (Doc. 41.) Following the Court's issuance of an Order to Show Cause concerning Plaintiff's

23    failure to file an opposition or statement of non-opposition to Defendant's motion (Doc. 44),

24    Plaintiff filed an opposition on March 10, 2024 (Doc. 45). Defendant did not file a reply.

25    **II.     APPLICABLE LEGAL STANDARDS**

26              *Motions for Summary Judgment*

27         Summary judgment is appropriate when it is demonstrated that there "is no genuine

28    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

1  Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by

2  "citing to particular parts of materials in the record, including depositions, documents,

3  electronically stored information, affidavits or declarations, stipulations (including those made for

4  purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R.

5  Civ. P. 56(c)(1)(A).

6      Summary judgment should be entered, after adequate time for discovery and upon motion,

7  against a party who fails to make a showing sufficient to establish the existence of an element

8  essential to that party's case, and on which that party will bear the burden of proof at trial. *See*

9  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an

10  essential element of the nonmoving party's case necessarily renders all other facts immaterial."

11  *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party

12  to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec.*

13  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the

14  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

15  of their pleadings but is required to tender evidence of specific facts in the form of affidavits,

16  and/or admissible discovery material, in support of its contention that the dispute exists or shows

17  that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed.

18  R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.

19      The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

20  might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby,*

21  *Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d

22  626, 630 (9th Cir. 1987). Further, the opposing party must also demonstrate that the dispute is

23  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

24  party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor

25  to establish the existence of a factual dispute, the opposing party need not establish a material

26  issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to

27  require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec.*

28  *Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to

1    assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at

2    587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

3         In resolving the summary judgment motion, the evidence of the opposing party is to be

4    believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the

5    facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475

6    U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

7    obligation to produce a factual predicate from which the inference may be drawn. *See Richards v.*

8    *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

9    Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

10   show that there is some metaphysical doubt as to the material facts.... Where the record taken as a

11   whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

12   issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

13                    ***Eighth Amendment: Deliberate Indifference - Failure to Protect***

14        Prison officials have a duty "to take reasonable measures to guarantee the safety of

15   inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v.*

16   *Corrections Corp. of America,* 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer v. Brennan*,

17   511 U.S. 825, 832-33 (1994) & *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To

18   establish a violation of this duty, a prisoner must "show that the officials acted with deliberate

19   indifference to threat of serious harm or injury to an inmate." *Id.* (citing *Gibson v. County of*

20   *Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

21        A failure to protect claim under the Eighth Amendment requires a showing that "the

22   official [knew] of and disregard[ed] an excessive risk to inmate ... safety." *Farmer*, 511 U.S. at

23   837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of

24   fact subject to demonstration in the usual ways, including inference from circumstantial

25   evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from

26   the very fact that the risk was obvious." *Id.* at 842 (citations omitted). The duty to protect a

27   prisoner from serious harm requires that prison officials take reasonable measures to guarantee

28   the safety and well-being of the prisoner. *Id*. at 832-33; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th

1    Cir. 1998). As "only the unnecessary and wanton infliction of pain implicates the Eighth

2    Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently

3    culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotations marks,

4    emphasis & citations omitted).

5          To state a claim, the Eighth Amendment requires allegations sufficient to plausibly show

6    that prison officials were deliberately indifferent to a substantial risk of harm or safety. *Farmer*,

7    511 U.S. at 847. The objective component of an Eighth Amendment requires that a prisoner show

8    he was deprived of something "sufficiently serious." *Foster v. Runnels*, 554 F.3d 807, 812 (9th

9    Cir. 2009) (quoting *Farmer*, 511 U.S. at 834. The state of mind requirement under the subjective

10   component of the Eighth Amendment standard has been defined as "deliberate indifference" to an

11   inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard,

12   a prison official cannot be found liable for denying an inmate humane conditions of confinement

13   unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837.

14   ### III.    PLAINTIFF'S ALLEGATIONS

15       Plaintiff contends that on the evening of September 15, 2021, he was
16   working as a porter on third watch, distributing the evening meal.
     Defendant Lima was working as the "tower Booth" officer, opening
17   and closing cell doors "by remote Button." Plaintiff was
     accompanied by Correctional Officer Ortiz (not a named defendant).
18   Ortiz began unlocking the cell door tray slots so that inmates could
     receive their evening meal from the porters. Inmates were to return
19   their trays and the porters would collect or remove them. Plaintiff
     asserts that while Ortiz was collecting trays in "section-A," Plaintiff
20   was working in "C" section. Plaintiff contends Defendant Lima was
     aware that the inmates in C section are to remain in their cells
21   because they had not been "cleared to exit … without escort for
     [their] safety and those of whom was not on orientation safety."
22   Plaintiff states that "[f]or some unknown reason," Lima "abandoned
     procedures in allowing C/O Ortiz to remove trays from the slots of
23   doors and open inmate Hernandez #BN6528 and Jones #BK3236
     whom was on orientation and not cleared to be among inmates
24   without staff security…." Hernandez and Jones exited their cell, went
     through the B section sally port and into C section where Plaintiff
25   was working. Plaintiff contends Hernandez and Jones attacked him.
     As a result of the attack, Plaintiff sustained a "deep cut" to his right
26   lower leg that required medical attention. Plaintiff seeks
     compensatory damages in the sum of $750,000.

27   (*See* Doc. 11 at 3 [First Screening Order], citations omitted.)

28   //

## IV.    DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

1. Plaintiff Stanley V. Wells is an incarcerated individual in the custody of the California Department of Corrections and Rehabilitation (CDCR). At all times relevant to the allegations in this case, Plaintiff was housed at California State Prison – Corcoran (CSP – Corcoran).

2. Plaintiff filed his Complaint on February 18, 2022, while housed within the custody of CDCR.

3. In his Complaint, Plaintiff alleges that on September 15, 2021, Defendant Lima was working as the Control Booth Officer in Facility 4B, Building 4L (4B4L) at CSP - Corcoran. Plaintiff alleges that Defendant Lima opened the cell doors of two inmates (Hernandez and Jones) who were on orientation status during meal tray collection. These inmates proceeded to slip through the openings in their cell doors and attack Plaintiff as he was conducting his porter duties and collecting meal trays.

4. The Court screened Plaintiff's Complaint as required under 28 U.S.C. § 1915A(a) and determined that Plaintiff stated a cognizable Eighth Amendment deliberate indifference claim against Defendant Lima.

5. As of September 15, 2021, Defendant Lima was employed by CDCR as a Correctional Officer at CSP – Corcoran. As of that date, Defendant Lima was assigned to the role of Control Booth Officer in Facility 4B, Building 4L.

6. As of September 15, 2021, Plaintiff was housed in Facility 4B, Building 4L at CSP – Corcoran.

7. As of September 15, 2021, Facility 4B was on a Non-Designated Programming Facility (NDPF) yard and exclusively housed inmates with a Level 2 security level.

8. Inmates are endorsed to an NDPF yard after a careful review of their assessed security level, potential safety concerns, and housing/rehabilitation needs. Inmates are only assigned to CDCR facilities with a security level that corresponds to their placement score, which is determined by a review of an inmate's case factors (e.g., age, commitment offense and if violence used, prior incarceration history, gang

5

involvement).

9. Inmates who transfer to a new facility that they have been endorsed to are on "orientation status" until they are seen by an Initial Classification Committee. This committee typically happens four to twelve days after an inmate's arrival.

10. Inmates on orientation status in Facility 4B, Building 4L, an NDPF facility, have been endorsed to house there prior to their arrival.

11. As of September 15, 2021, Facility 4B operated as a dorm setting with inmates' cell doors open throughout the day, regardless of inmates' orientation status.

12. As of September 15, 2021, Plaintiff was assigned to work as an afternoon porter in Facility 4B, Building 4L.

13. As of September 15, 2021, inmates Hernandez and Jones were housed in Facility 4B, Building 4L at CSP – Corcoran.

14. As of September 15, 2021, inmates Hernandez and Jones were both assigned to security Level 2 based on their respective placement scores. These placement scores and endorsement to be housed in Facility 4B were generally based on a lack of prior incarceration history and/or lack of serious disciplinary incidents and minimal incarceration sentences.

15. As of September 15, 2021, inmate Hernandez and Jones were both on orientation status.

16. Prior to September 15, 2021, Defendant Lima did not know who Plaintiff was beyond having general knowledge that he was housed in Facility 4B. Defendant Lima had never had direct any interactions with Plaintiff, to the best of his recollection.

17. Prior to the September 15, 2021 incident, Defendant Lima did not know who inmates Hernandez and Jones were beyond having general knowledge that they were housed in Facility 4B. Defendant Lima had never had any direct interaction with either inmate, to the best of his recollection. Defendant Lima likewise does not remember whether inmates Hernandez and Jones were on orientation status as of September 15, 2021.

18. Prior to the September 15, 2021 incident, Defendant Lima did not know or suspect

that inmates Hernandez and Jones specifically, together or individually, posed a safety threat to any inmate housed in Facility 4B, including Plaintiff.

19. As of September 15, 2021, Defendant Lima had no reason to know or suspect that any inmate on orientation status posed a safety threat to any inmate housed in Facility 4B, including Plaintiff.

20. On September 15, 2021, at approximately 7:05 p.m. as Defendant Lima opened the cell doors of inmates housed in Facility 4B to facilitate meal tray collection, a correctional staff member was walking in the unit as doors were opened. Meal trays were collected by non-party inmate porter Lopes.

21. On September 15, 2021, between approximately 7:06:10 and 7:06:35 p.m., Defendant Lima opened the cell doors of inmates Hernandez and Jones approximately 10-12 inches in order for them to place their meal trays on the ground outside of their respective cell doors.

22. At approximately 7:06:36 p.m., inmate Hernandez exited his cell through the gap created when Defendant Lima began to open his cell door and began to attack non-party inmate Lopes, who was approximately two feet away conducting his porter duties.

23. At approximately 7:06:44 p.m., inmate Jones exited his cell through the gap that remained as Defendant Lima was beginning to close his cell door. Jones began to attack inmate Lopes, who was approximately fifteen feet away, fleeing inmate Hernandez's attack.

24. At approximately 7:06:54 p.m., Defendant Lima, from his position in the Facility 4B control booth, hit his institutional alarm and utilized his radio to notify staff of the ensuing incident.

25. At approximately 7:07:15 p.m., Defendant Lima opened the Facility 4B doors to allow staff to enter the building and respond to the incident.

26. Inmates Hernandez and Jones made their way from Facility 4B Section A over to Section C, where Plaintiff was conducting his porter duties.

1  (Doc. 41-6 [hereafter UDF].)

2      Plaintiff's opposition references Local Rule 260(b) and states: "Plaintiff submits the

3  following statements of Disputed facts opposing Defendant Lima undisputed facts and deny each

4  itemized that has been identified as fact." (Doc. 45 at 1.) Thereafter, Plaintiff addressed UDF

5  numbers 10, 11, and 17-26. (*Id*. at 2-5.) Additionally included is a copy of Defendant's Separate

6  Statement of Undisputed Facts in Support of Defendant's Motion for Summary Judgment that

7  includes Plaintiff's responses to each of the numbered UDFs. (*Id*. at 8-13.) Following review, the

8  undersigned liberally construes[1] Plaintiff's responses to Defendant's UDFs as follows: numbers

9  1, 2, 4, 5, 6, 9, 12, and 13 are admitted, whereas numbers 3, 7, 8, 10, 11, and 14 through 26 are

10  denied.

11      **V.    SUMMARY OF THE PARTIES' BRIEFING**

12          ***Defendant's Motion for Summary Judgment (Doc. 41)***

13      Defendant contends he was not deliberately indifferent to Plaintiff's serious risk of harm.

14  Specifically, Defendant asserts that Plaintiff's claim that Defendant opened inmates Hernandez

15  and Jones's cell doors knowing they posed a risk to Plaintiff's safety lacks merit. Defendant

16  maintains Plaintiff has no evidence that he knew of Hernandez and Jones's orientation status, and

17  that even had Defendant known, "that did not implicitly mean that they posed a danger" to other

18  inmates. Additionally, Defendant argues he immediately responded to the attack and took action

19  to stop the assault perpetrated by Hernandez and Jones. Therefore, Defendant contends Plaintiff

20  cannot prevail and summary judgment is appropriate. Finally, Defendant maintains he is entitled

21  to qualified immunity.

22          ***Plaintiff's Opposition to Defendant's Motion (Doc. 45)***

23      Briefly stated, in the narrative portion of his opposition, Plaintiff states that Defendant is

24  improperly "placing blame … on those who endorsed" Hernandez and Jones to Building 4B4L

25  and argues newly arrived inmates on orientation status are not to have contact "with

26  [programming] inmates until the facility initial classification Committee release[s] them …."

27  ───────────

[1] Plaintiff does not "admit" or "deny" each UDF, although he does reply affirmatively in a few instances.
28  Nevertheless, the undersigned's construed conclusion is informed by a review of each of Plaintiff's substantive
responses.

Additionally, Plaintiff contends orientation inmates like Hernandez and Jones dine in cell.

Plaintiff argues that officers assigned to the control booth are "aware from their [acknowledgment] in the computer 'SOMS' that what status of restrictions inmates are on" and that Defendant Lima "knew upon his arrival in 4b-4L building the inmates in each building section that was allowed to come out of their cell." Next, Plaintiff maintains that the Herleman declaration is not "correct otherwise" Defendant Lima "would have no reason to be in 4b-4L building tower control booth if inmates on orientation could have physical contact with other programming inmates."

Plaintiff relies on Title 15 of the California Code of Regulations section 3335.5(c) to support his position and argues "orientation in itself pose[s] a threat to other inmates until" the Classification Committee review occurs. Plaintiff asserts "the building 'AVSS' in 'B' Section" will show what inmate Lopes (who was also assaulted by Hernandez and Jones) and Correctional Officer Ortiz (not a defendant in this action) were doing at the time of the incident. And although not entirely clear, Plaintiff seems to dispute whether Hernandez or Jones commenced the attack on Lopes based upon the location of their cells. Additionally, it appears Plaintiff disputes the timing of Defendant Lima's hitting of the alarm, stating that it was "not when it started," but rather when Defendant observed Plaintiff – rather than Lopes – being attacked.

## VI.    DISCUSSION

### A.  *Defendant is Entitled to Summary Judgment*

Defendant Lima contends he was not deliberately indifferent to Plaintiff's serious risk of harm. Specifically, Defendant asserts he had no knowledge that opening inmates Hernandez and Jones's cell doors posed a risk to Plaintiff's safety. Defendant had no knowledge of Hernandez and Jones's orientation status, or that either would pose a threat to inmate safety. Additionally, Defendant argues he immediately responded to the attack and took action to stop the assault perpetrated by Hernandez and Jones.

In resolving Defendant's motion herein, the undersigned has reviewed all the evidence presented, including the pleadings, the supporting declarations of defense counsel, P. Herleman and P. Williams, and Defendant Lima, as well as the video evidence submitted. (*See* Doc. 46.)

Defendant Met His Initial Burden

Defendant Lima was the Control Booth Officer in 4B4L on the date of the incident, a NDPF unit housing inmates designated level 2 security following a placement review. UDF 5-8. Upon arrival at 4B4L, inmates are on "orientation status" until their initial classification committee review. UDF 9-10. Facility 4B4L is a dorm setting and allows inmate cell doors to remain open throughout the day. UDF 11. On the date of the incident involving Plaintiff, inmates Hernandez and Jones were housed on 4B4L following placement and endorsement; both were on orientation status. UDF 13-15. Defendant did not know Plaintiff, Hernandez, or Jones, prior to the incident beyond his general knowledge each was housed on 4B4L. UDF 16-17. He did not know or suspect Hernandez or Jones, or any inmate on orientation status, posed a threat to any inmate in Facility 4B prior to this incident. UDF 18-19. On September 15, 2021, at about 7:06 p.m., Defendant opened Hernandez and Jones's cell doors approximately ten to twelve inches to allow them to place their meal trays outside their cell doors. UDF 21. Inmate Hernandez slid through the gap and began to attack inmate porter Lopes. UDF 20, 22. Inmate Jones slid through the gap in his cell door seconds later, also attacking Lopes. UDF 23. Within ten seconds, Defendant hit his alarm and notified staff via radio. UDF 24. When Defendant opened the Facility 4B doors for responding staff, Hernandez and Jones had moved from section A to section C, assaulting Plaintiff and causing him minor injuries. UDF 25-26.

Defendant Lima has met his initial burden by demonstrating there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Specifically, Defendant Lima's facts demonstrate that he had no knowledge Hernandez and Jones presented any excessive risk to Plaintiff and, given his relatively speedy response time, that he did not disregard any such risk. *Farmer*, 511 U.S. at 837. Thus, the burden shifts to Plaintiff as the non-moving party to establish that a genuine issue as to any material fact actually does exist. *Matsushita*, 475 U.S. at 586.

Plaintiff Has Not Met His Burden of Production

As noted above, Plaintiff disputes Defendant's UDF 3, 7, 8, 10, 11, and 14 through 26. As concerns UDF 3, Plaintiff contends Hernandez and Jones were "restricted to assigned quarters until evaluate for safety and security factors clear the both of them for program on FAC-4B that

10

1    meant [they] had no contact with other programming inmates on fac-4b inside the building."

2    (Doc. 45 at 9.) But Plaintiff's assertions that his attackers were restricted to their cells and

3    prohibited from having contact with him are unsupported by any evidence. There is no evidence

4    that Hernandez and Jones were "restricted to assigned" quarters or that they were not permitted

5    "contact with other programming inmates" in 4B4L. Plaintiff's mere allegation is insufficient. *See*

6    *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To

7    survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts,

8    not sweeping conclusory allegations); *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th

9    Cir. 2007) (a party may not rely on speculative or conclusory testimony contained within

10   affidavits, pleadings, or moving papers to raise a genuine dispute of material fact in an effort to

11   defeat summary judgment); *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir.

12   1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary

13   judgment"); *Burch v. Regents of Univ. of California*, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006)

14   ("statements in declarations based on speculation or improper legal conclusions, or argumentative

15   statements, are not facts and likewise will not be considered on a motion for summary judgment"

16   (emphasis omitted)).

17        The same can be said of Plaintiff's disputes with UDF 7 (that 4B4L "was a level two

18   orientation building for new arrivals"), 8 (inmates endorsed to "Corcoran level two [were] placed

19   on orientation and restricted to their housing until release for program"), 10 (orientation status

20   inmates were "restricted from contact of inmates"), and 11 (orientation status inmates "couldn't

21   have physical contact with other inmates"), 11 ("4B FACILITY DOORS were open but not in 4b-

22   4L with orientation inmates"). Other than his own beliefs, Plaintiff offers no evidence to support

23   his conclusory assertions that inmates on orientation status are restricted to their cells. *Cafasso*,

24   637 F.3d at 1061; *Soremekun*, 509 F.3d at 984; *Nelson*, 83 F.3d at 1081-82; *Burch*, 433 F.Supp.2d

25   at 1119. More specifically, Plaintiff's unsupported beliefs do not overcome Defendant's evidence,

26   particularly that offered by Declaration of P. Herleman. Herleman declares he was a sergeant

27   assigned to Facility 4B on the date of the incident; as sergeant, he supervised all correctional staff

28   and inmates. (Doc. 41-3, ¶ 2.) At that time, Facility 4B was a NDPF, exclusively housing inmates

1    with a level 2 security designation. (*Id.*, ¶ 5.) NDPFs were established to afford inmates greater

2    access to rehabilitative programs and job opportunities, free from the influence of gang pressure

3    and criminal activity. (*Id.*, ¶ 6.) To preserve the safety and program efficiency of NDPF yards, a

4    careful review of an inmate's individual case factors, security level, potential safety concerns, and

5    housing/rehabilitation needs is done before designating and endorsing an inmate to an NDPF

6    yard. (*Id.* at ¶¶ 6-7.) An inmate's placement score can be reduced if that inmate has been

7    programming and is discipline-free whereas those inmates receiving any disciplinary action will

8    have an increased placement score. (*Id.*, ¶ 7.) A level 2 security designation involves a placement

9    score between 19 and 35 and level 2 facilities primarily consist of open dorms with a secure

10   perimeter. (*Id.*, ¶ 8.) Inmates' cell doors are unlocked in the morning and opened and closed by

11   inmates throughout the day without the need for correctional staff's assistance regardless of an

12   inmate's orientation status. (*Id.*, ¶ 9.) Being on "orientation status" is maintained until the recently

13   endorsed inmate is seen by the initial classification committee that will determine whether the

14   inmate has housing or programming needs that warrant a transfer to another facility; the

15   classification committee meeting typically occurs within four to twelve days of an inmate's

16   arrival. (*Id.*, ¶ 10.) During orientation status in Facility 4B, inmates are escorted by correctional

17   staff when outside the building, but an escort is not required to move about inside the building or

18   sections of that building. (*Id.*, ¶ 12.)

19        Regarding UDF 14, Plaintiff's assertion that he was attacked by inmates Hernandez and

20   Jones on September 15, 2021, in combination with the fact Plaintiff was interviewed by

21   Lieutenant Magallanes two days later wherein those inmates were identified as "enemy/safety"

22   concerns for Plaintiff, does not create a genuine issue of material fact concerning Hernandez and

23   Jones's level 2 placement or endorsement scores assigned before the incident. (*See* Doc. 41-2

24   [Exhibits to Declaration of Patricia M. Kealy] at 7, 9, 11, 13-14 [Hernandez] & 18, 20, 22, 24-25

25   [Jones].) *See, e.g.*, *Jaross v. Phillips*, No. 2:10-cv-01631-PMP-GWF, 2011 WL 3471865, at *6

26   (D. Nev. Aug. 9, 2011) ("The evidence of the incident itself and the evidence of Phillips'

27   behavior throughout and after his encounter with Jaross are insufficient to raise a genuine issue of

28   material fact that Phillips acted with intent"); *Williams v. Roark*, No. 2:21-cv-00128-JRS-MKK,

2024 WL 198392, at *11 n.13 (S.D. Ind. Jan. 18, 2024) ("Mr. Williams' allegations that Sgt. Leffler approached him on August 11, 2020, three days after the incident 'making subtle offensive remarks to the course of events and how Plaintiff would pay dearly for breaking his Oakley glasses' do not create a material fact issue related to use of force during the instant incident).[2]

Concerning UDF 15, wherein Plaintiff alleges Hernandez and Jones's orientation status "meant no-contact with porters," Plaintiff's assertions are unsupported and conclusory and, thus, do not create a genuine issue of material fact. *Cafasso*, 637 F.3d at 1061; *Soremekun*, 509 F.3d at 984; *Nelson*, 83 F.3d at 1081-82; *Burch*, 433 F.Supp.2d at 1119.

UDF 16 concerns Defendant's general knowledge that Plaintiff was housed in Facility 4B and Defendant's statement that he did not recall having any direct interaction with Plaintiff prior to the date of the incident. Plaintiff attempts to dispute UDF 16 by asserting the following: "the tower booth officers whom were assigned to that post 4B-4L made 3rd watch porters aware whom was to be cell feed because [they] couldn't come out to obtain their own meal tray and 'SOMS' in the computer advise." Plaintiff's dispute or denial fails to address the substance of UDF 16 and does not serve to create a genuine issue of material fact. *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc.*, 809 F.2d at 626.

Next, UDF 17 concerns Defendant's statements that he did not know either Hernandez or Jones beyond having general knowledge they were housed in Facility 4B, that he does not recall having any direct interaction with either Hernandez or Jones prior to the date of the incident and does not remember whether Hernandez and Jones were on orientation status on that date. Plaintiff attempts to dispute UDF 17 by asserting the following: "ok 4B-4L was the only building with staff in the control booth for the control to what doors? It was only for those inmates with no-contact restrictions with other inmates such as Hernandez and Jones otherwise [they] wouldn't be

---

[2] In the CDCR-128B form dated September 23, 2021, and attached to Plaintiff's opposition, Lieutenant Magallanes noted the following: "Wells mentioned why we continue to allow inmates who are 'active' and refuse to program on a Non Designated Program Facility (NDPF) knowingly [sic] knowing they will attack a programming inmate housed on Facility 4B. I explained to Wells the inmates he is referring to are disciplinary free and meet the criteria for endorsement on an NDPF facility. Wells stated he disagreed with the release of inmates no willing to program on a NDPF and stated we need to stop that before someone gets seriously hurt." (Doc. 45 at 7.) Plaintiff's disagreement with or belief about NDPF protocols does not create a genuine issue of material fact.

1   on orientation." Again, Plaintiff's conclusory and unsupported assertion does not overcome

2   Defendant's evidence to create a genuine issue of material fact. *Cafasso*, 637 F.3d at 1061;

3   *Soremekun*, 509 F.3d at 984; *Nelson*, 83 F.3d at 1081-82; *Burch*, 433 F.Supp.2d at 1119. (*See*

4   *also* Doc. 41-3 [Declaration of P. Herleman] at ¶ 12 [inmates on orientation status are free to

5   move about inside the NDPF building or sections of that building without escort].)

6         UDF 18 and 19 concern Defendant's statements that he did not know or suspect that

7   Hernandez and Jones posed a threat to the safety of those housed in Facility 4B, or that any

8   inmate on orientation status posed a safety threat to any inmate housed on that facility, including

9   Plaintiff. Plaintiff attempts to dispute UDF 18 by asserting Defendant "had to know what inmates

10  under his control posed a safety risk if they couldn't have contact with other inmates in 4B-4L

11  BUILDING." Like Plaintiff's other disputes, his assertion is conclusory and unsupported.

12  Plaintiff offers no evidence other than his continued bare assertions that "orientation status"

13  inmates are not to have contact with other inmates. *Cafasso*, 637 F.3d at 1061; *Soremekun*, 509

14  F.3d at 984; *Nelson*, 83 F.3d at 1081-82; *Burch*, 433 F.Supp.2d at 1119. Importantly, Plaintiff

15  offers no evidence to refute Defendant's showing that both programming and orientation-status

16  inmates have comparable, low-risk endorsement scores for placement in a Level 2 security level.

17  (*See* Doc. 41-3, ¶ 11.)

18        Next, Plaintiff attempts to dispute UDF 19 by stating that as of the date of the incident,

19  "according to CAL CODE of Regs.Tit.15; 3335.5(C) state for institution security and the safety

20  of persons until comm, evaluate safety, security FACTOR." However, during the relevant period,

21  that section appears to have applied only to inmates housed in an administrative segregation unit.

22  *See, e.g.*, *Rico v. Beard*, No. 2:17-cv-1402 KJM DB P, 2018 WL 3702310, at *5 (E.D. Cal. Aug.

23  2, 2018) (distinguishing the regulations applicable to the SHU and the ASU and stating generally

24  that "[i]nmates are placed in the ASU for a variety of reasons including where they present or are

25  subjected to an immediate threat to safety, where they are subject to an investigation, where they

26  are related to a prison staff member, where they have been the victim of a sex crime, and for

27  medical or psychiatric reasons. Cal. Code Regs. tit. 15, §§ 3335, 3335.5"). Thus, the section cited

28  by Plaintiff was not applicable to the NDPF designated 4B Facility. In sum, Plaintiff's disputes

14

1    with UDF 18 and 19 are unsupported. They do not overcome Defendant's evidence that the fact

2    Hernandez and Jones were on orientation status does not support a presumption that either posed

3    a threat to safety because both had been endorsed to the facility after a thorough review; that

4    endorsement creates a presumption of a "minimum safety risk to other inmates housed in the

5    same facility." (*See* Doc. 41-3 [Declaration of P. Herleman] at 5, ¶¶ 24-25.)

6        Next, UDF 20 involves Defendant opening the cell doors for inmates housed in Facility

7    4B to facilitate meal tray collection in the presence of correctional staff and inmate porter Lopes.

8    Plaintiff disputes this fact by stating Defendant Lima "disregarded what the c/o ORTIZ floor staff

9    was doing in 'A' [section] removing trays through the tray slots by opening cell doors, the

10   orientation sign clearly above their doors gave [Defendant] LIMA the warning not to open the

11   door for safety of person." As noted above, Defendant's evidence reveals that Facility 4B was a

12   dorm setting wherein cell doors were unlocked in the morning and were opened and closed

13   throughout the day by inmates without the assistance of correctional staff, despite any inmate's

14   orientation status. (*See* Doc. 41-3 [Declaration of P. Herleman], at ¶ 9; UDF 11.) As of September

15   15, 2021, orientation status inmates on Facility 4B were to be cell-fed, meaning they "received,

16   ate, and returned their meal trays from within their cells." (*Id.*, ¶ 14.) Yet on the date of the

17   incident, all inmates, including those on orientation status, in Facility 4B were fed dinner in their

18   cells likely due to "a modified program that was in place due to COVID-19 protocols" as the

19   entire facility was still affected by the virus during the month of September. (*Id.*, at ¶ 15.) In-cell

20   feeding of all inmates on that date could also have been due to "count" occurring during the

21   dinner hour. (*Id.*, at ¶ 16.)

22       Other than his conclusory assertion inferring Defendant Lima was required to remove

23   meal trays only through the cell door tray slots, Plaintiff offers no evidence to support his

24   contention that Defendant Lima improperly "disregarded" actions taken by "floor staff" in

25   another section concerning the collection of dinner trays. *F.T.C. v. Publ'g Clearing House, Inc.*,

26   104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997) ("A conclusory, self-serving

27   affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine

28   issue of material fact"). Notably too, in support of Defendant's motion, P. Herleman declares:

1
2
3
4
5
6

> Based on my experience supervising Facility 4B and understanding of NDPF facilities' operation, it is my professional opinion that Officer Lima's protocol for tray collection, while not directly aligned with mealtime policy for inmates on orientation status, did not deliberately and knowingly endanger the safety of the inmates housed in Building 4B4L. Without direct knowledge that an inmate posed a threat to the safety of the other inmates in the building, Officer Lima was justified to believe that an endorsed orientation-status inmate in Facility 4B would not take advantage of a crack in their cell door to exit their cell and assault a non-orientation status inmate, such as Plaintiff.

7   (Doc. 41-3 at 6, ¶ 26.) *See In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) (personal

8   knowledge may be inferred from the declarant's position); *Barthelemy v. Air Lines Pilots Ass'n*,

9   897 F.2d 999, 1018 (9th Cir. 1990) (personal knowledge can be inferred from a declarant's

10  position and nature of participation in the matter). Here, although Plaintiff's response to

11  Defendant's statement of undisputed facts is under penalty of perjury (Doc. 45 at 5), he does not

12  attest that his assertions are based on personal knowledge. *See, e.g.*, *Lovelace v. Armor*

13  *Correctional Health Services, Inc*., No. 1:18cv684 (TSE/TCB), 2022 WL 658556, at *4 n. 9 (E.D.

14  Va. Mar. 4, 2022) (on summary judgment, plaintiff's objection to a nurse's listed duties did not

15  create a triable issue of fact where "the plaintiff solely relies on his own self-serving testimony"

16  and did not "swear to it based upon personal knowledge or first-hand experience and did not

17  include his assertions about [the nurse's] duties in his separate affidavit" based on personal

18  knowledge); *Simon v. McMahon*, No. ED CV 16-2007-RGK(E), 2019 WL 3059581, at *8 (C.D.

19  Cal. May 1, 2019) (finding that Plaintiff's "unsupported contention" that agency's search policy

20  proffered in support of its motion for summary judgment was not in effect at operative time "does

21  not raise any triable issue of fact," citing *Soremekum*); *Brinkman v. Schriro*, No. CV 08-0670-

22  TUC-FRZ, 2013 WL 11311260, at *5 (D. Ariz. Mar. 20, 2013) (granting summary judgment and

23  stating "[g]iven the Defendant's role as the ADC Administrator of Pastoral Activities and his past

24  duties as chaplain at different ADC complexes, the Court finds that in his position, Defendant

25  would have personal knowledge of the practices related to inmate religious services at ADC

26  facilities," citing *In re Kaypro*).

27          Nor has Plaintiff offered any evidence in support of his apparent proposition that an

28  "orientation sign" above a cell door meant that the inmate's door could not be opened for any

16

1    reason. *Cafasso*, 637 F.3d at 1061; *Soremekun*, 509 F.3d at 984; *Nelson*, 83 F.3d at 1081-82;

2    *Burch*, 433 F.Supp.2d at 1119.

3       UDFs 21 through 25 concern Defendant Lima's actions between about 7:06 p.m. and 7:08

4    p.m. on September 15, 2021. Specifically, these proffered facts set forth that Defendant Lima

5    opened Hernandez and Jones's cell doors ten to twelve inches to allow them to place their meal

6    trays on the ground outside their cells, that Hernandez exited through the gap and began to attack

7    inmate porter Lopes, that less than ten seconds later Jones did the same as Defendant began

8    closing Jones's door, that Defendant hit the alarm and used his radio to notify staff and opened

9    the Facility 4B doors for the responding staff, and that Hernandez and Jones made their way to

10   the section where Plaintiff was conducting his porter duties. First, Plaintiff's dispute with UDF 21

11   does not address the substance of Defendant's undisputed fact—it concerns a conversation he had

12   with inmate porter Lopes— and thus should be overruled. *Anderson*, 477 U.S. at 248; *T.W. Elec.*

13   *Serv., Inc*., 809 F.2d at 626. Second, as concerns UDF 22, Plaintiff states: "at 7:06:36 p.m., meant

14   the cell of Hernandez and JONES was open for '25' seconds [before] Jones attacked inmate

15   LOPES and his is [before] Hernandez cell." The Court is unclear as to Plaintiff's point.

16   Defendant's proffered facts are unchanged in any event: Defendant opened Hernandez and

17   Jones's cell doors so they could return their meal trays and within a span of 25 seconds each had

18   slipped through the ten-to-twelve-inch gap in the cell door. *Anderson*, 477 U.S. at 248; *T.W. Elec.*

19   *Serv., Inc*., 809 F.2d at 626. Third, as to UDF 23, Plaintiff states that had Defendant "been aware

20   of these attacks what prevented him from securing the incident in that section only the building

21   'AVSS' WILL show what [Defendant's] 'BWC' has not." In a span of only fourteen seconds,

22   Hernandez commenced his attack on inmate porter Lopes, Jones joined Hernandez in attacking

23   Lopes, and Defendant hit his institutional alarm and radioed for assistance, as the video evidence

24   from Defendant's body worn camera shows. If Plaintiff believes the "'AVSS'" video would

25   dispute those facts and support his inference that Defendant should have been able to secure only

26   that section of Facility 4B, it was Plaintiff's burden to obtain such evidence. Fed. R. Civ. P. 56(c);

27   *Matsushita*, 475 U.S. at 586 n.11. But without that evidence to proffer, that Plaintiff's belief is

28   speculative.

1    Fourth, concerning UDF 24, Plaintiff contends Defendant "hit his alarm after the fact" and

2    "didn't secure the area the incident started from allowing the risk of harm to happen to" Plaintiff.

3    Plaintiff offers no evidence to support an assertion that Defendant only hit the alarm after

4    Hernandez and Jones attacked Plaintiff. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11;

5    *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc.*, 809 F.2d at 626. Again, only 14 seconds

6    elapsed between Hernandez and Jones leaving their cells, attacking inmate porter Lopes, and

7    Defendant activating his alarm. It is not reasonable to infer Defendant delayed in responding to

8    the attack by Hernandez and Jones. *Richards*, 602 F. Supp. at 1244-45. The Court should overrule

9    Plaintiff's denial. Fifth, concerning UDF 25—wherein Defendant indicates he opened the Facility

10    4B door for responding staff—Plaintiff states Defendant closed Hernandez and Jones "IN C

11    SECTION ON PLAINTIFF FROM 'B' SECTION DOOR OPENING" before opening the

12    facility's doors for staff. Plaintiff offers no evidence to support his speculative assertion. *Cafasso*,

13    637 F.3d at 1061; *Soremekun*, 509 F.3d at 984; *Nelson*, 83 F.3d at 1081-82; *Burch*, 433 F.Supp.2d

14    at 1119.

15    Lastly, Plaintiff disputes UDF 26—stating Hernandez and Jones made their way from

16    section A to section C where they assaulted Plaintiff— by stating "again these two inmates made

17    their way from a unsecure incident area of 4b-4L-sec: B thru a open door to where plaintiff was

18    conducting his porter duties [where Defendant Lima] watch plaintiff attacked as he hit his alarm."

19    Other than his own self-serving statement, Plaintiff offers no evidence to support his assertion

20    that he was attacked by Hernandez and Jones at the same time Defendant was activating his

21    institutional alarm. *F.T.C.*, 104 F.3d at 1171.

22    Concerning the remainder of Plaintiff's opposition, he fails to offer any evidence that as a

23    control booth officer, Defendant Lima was aware that Hernandez and Jones were "restricted" and

24    not allowed "to come out of their cells." Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.

25    Nor does Plaintiff have any personal knowledge regarding his assertion. *F.T.C.*, 104 F.3d at 1171.

26    To the extent Plaintiff argues Herleman's declaration is erroneous as concerns an

27    orientation status inmate's ability to leave his cell, Plaintiff's conclusory allegation is insufficient

28    to create a genuine dispute of material fact. Herleman was a sergeant assigned to Building 4B at

18

the time of the incident giving rise to Plaintiff's claim, supervised all correctional staff and inmates working in Herleman's assigned area, is familiar with the NDPFs, and placement and endorsement protocols and determinations. (*See* Doc. 41-3 at ¶¶ 1-2, 5-13.) Plaintiff does not attest to having any personal knowledge concerning that information. Further, the CDCR-128B form pertaining to Plaintiff's September 23, 2021, interview with Lieutenant Magallanes supports that conclusion. *See* n.2, *ante*.

To the extent Plaintiff argues that Herleman's declaration places "blame" on those who endorsed Hernandez and Jones to Facility or Building 4B, his argument is not well taken. Herleman's declaration simply explains the endorsement and placement process and assigns no blame in that regard. (*See* Doc. 41-3.)

Concerning Plaintiff's contention that Defendant had knowledge that Hernandez and Jones, as orientation status inmates, presented a threat to Plaintiff's safety because Defendant had access to SOMS, Plaintiff offers no evidence to support his position. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. Again, he advances only a conclusory assertion that is insufficient to create a material fact. *Cafasso*, 637 F.3d at 1061; *Soremekun*, 509 F.3d at 984; *Nelson*, 83 F.3d at 1081-82; *Burch*, 433 F.Supp.2d at 1119.

Finally, the undersigned has reviewed the allegations in Plaintiff's complaint. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (nonmovant's contentions in other pleadings are to be considered in connection with summary judgment motion so long as attested to under penalty of perjury). However, the allegations therein material to Defendant Lima's summary judgment motion – that Defendant Lima was aware inmates in C Section were confined to their cells because they had not been cleared to exit without escort – do not establish the existence of any factual dispute. That is because the allegations are unsupported by evidence and not offered on the basis of Plaintiff's personal knowledge that (1) a policy existed restricting inmates to their cells, (2) inmates were unable to exit their cells without escort under such policy, or (3) Defendant Lima knew of such policy. *See* Fed. R. Civ. P. 56(c); *e.g., Simon*, 2019 WL 3059581, at *8 (C.D. Cal. May 1, 2019).

///

1    **B.  *Plaintiff Did Not Establish Deliberate Indifference***

2         The state of mind, or subjective, element of an Eighth Amendment cause of action

3    concerns deliberate indifference to an inmate's health and safety. *Farmer*, 511 U.S. at 834. Prison

4    officials display a deliberate indifference to an inmate's well-being only when they know of and

5    consciously disregard a substantial risk of harm to his health or safety. *Id.* at 837. "[T]he official

6    must both be aware of facts from which the inference could be drawn that a substantial risk of

7    serious harm exists, and he must also draw the inference." *Id.*; *see Taylor v. Barkes*, 575 U.S. 822,

8    827 (2015) (noting that *Farmer* holds that "Eighth Amendment liability requires actual awareness

9    of risk"). Therefore, "[i]t is not … every injury suffered by one prisoner at the hands of another

10   that translates into constitutional liability for prison officials responsible for the victim's safety."

11   *Farmer*, 511 U.S. at 834. If prison officials "did not know of the underlying facts indicating a

12   sufficiently substantial danger," and "were therefore unaware of the danger," or if "they knew the

13   underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was

14   unsubstantial or nonexistent," they may not be held liable. *Id.* at 844; *see Gibson*, 290 F.3d at

15   1188 (noting that a prison official who "should have been aware of the risk, but was not, ... has

16   not violated the Eighth Amendment, no matter how severe the risk"). Moreover, the deliberate

17   indifference standard requires that even if a prison official is alleged to have "actually kn[own] of

18   a substantial risk to [Plaintiff's] health or safety[,] [he] may be found free from liability if [he]

19   responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S.

20   at 844. Deliberate indifference is, therefore, "'something more than mere negligence,' but

21   'something less than acts or omissions for the very purpose of causing harm or with knowledge

22   that harm will result.'" *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (quoting *Farmer*, 511

23   U.S. at 835).

24         Here, Plaintiff has failed to establish that Defendant Lima knew of the risk presented by

25   Hernandez and Jones and therefore Defendant is not liable. *Farmer*, 511 U.S. at 844; *Gibson*, 290

26   F.3d at 1188. At most, this record demonstrates Defendant was negligent (concerning the method

27   for removing meal trays from Hernandez and Jones's cells) rather than deliberately indifferent.

28   *Cortez*, 776 F.3d at 1050. Nor has Plaintiff established that Defendant failed to reasonably

respond once Hernandez and Jones attacked the inmate porters; Defendant responded in seconds. *Farmer*, 511 U.S. at 844; *see, e.g.*, *Wilkerson v. Johnson*, 330 Fed. Appx. 257, 259 (2d Cir.2009) (affirming grant of summary judgment in favor of correctional officers where they responded "immediately" to defuse inmate fight); *Loggins v. Franklin County, Ohio*, 218 Fed. Appx. 466, 471 (6th Cir. 2007) (finding no failure to protect claim where officials did not know of any threat or danger to inmate and responded quickly to inmate-on-inmate assault); *McDaniels v. McKinna*, 96 Fed. Appx. 575, 580 (10th Cir. 2004) (holding correctional officer's slow reaction to inmate fight where officer lacked prior knowledge of specific threat to plaintiff's safety and entire incident lasted three minutes constituted at most negligence and did not support deliberate indifference claim); *Greenlee v. Shick*, No. 2:23-cv-00075-JMS-MG, 2025 WL 896310, at *7 (S.D. Ind. Mar. 24, 2025) (granting summary judgment on deliberate indifference claim based on allegation correctional officer failed to timely respond to attack, reasoning that evidence demonstrated officer arrived at the plaintiff's cell "pretty quick" after he began yelling for help, "which shows that the Officers acted with urgent care, not deliberate indifference"), *app'l filed* No. 25-1742 (7th Cir Apr. 30, 2025); *Horshaw v. Casper*, No. 14-CV-0248-NJR-DGW, 2016 WL 5394386, at *6 (S.D. Ill. Sept. 27, 2016) (granting summary judgment on failure to protect claim and stating "As to Teas [stationed in Tower 5], the evidence shows that she took action to stop the beating (which lasted approximately 17 seconds) within seconds of first noticing it"), *affirmed in relevant part*, *Horshaw v. Casper*, 910 F.3d 1027, 1030 (7th Cir. 2018). It therefore remains undisputed that Defendant Lima was unaware of any risk posed by inmates Hernandez and Jones to Plaintiff. Further, although Plaintiff alleged Defendant knew of the risk posed, on this record, the Court finds that Defendant acted reasonably in response to the risk. Accordingly, no reasonable juror could conclude that Defendant Lima acted with deliberate indifference.

### C. Summary of Findings

Plaintiff has failed to offer sufficient proof to establish any triable issue of fact concerning the essential elements of his Eighth Amendment failure to protect claim against Defendant Lima. *Celotex*, 477 U.S. at 322; *see also Farmer*, 511 U.S. at 832-33, 837, 844, 847. Plaintiff has not demonstrated, nor does it appear he could demonstrate, that Defendant Lima knew of and

1    disregarded an excessive risk to Plaintiff's health and safety. *Id.* at 834.

2            In sum, on this record, no rational trier of fact would find for Plaintiff as there is no

3    genuine issue for trial in this matter. *Matsushita*, 475 U.S. at 587. Thus, the undersigned will

4    recommend Defendant's motion for summary judgment be granted.[3]

5        **VII.    CONCLUSION AND RECOMMENDATIONS**

6            Based on the foregoing, the undersigned **HEREBY RECOMMENDS** that:

7        1.    Defendant's motion for summary judgment (Doc. 41) be **GRANTED**; and

8        2.    The Clerk of the Court be directed to enter judgment in favor of Defendant Lima and

9                to close this case.

10           These Findings and Recommendations will be submitted to the United States District

11   Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days**

12   after being served with a copy of these Findings and Recommendations, a party may file written

13   objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to

14   Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without

15   leave of Court and good cause shown. The Court will not consider exhibits attached to the

16   Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the

17   exhibit in the record by its CM/ECF document and page number, when possible, or otherwise

18   reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be

19   disregarded by the District Judge when reviewing these Findings and Recommendations under 28

20   U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result

21   in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

22   IT IS SO ORDERED.

23       Dated:    __**October 6, 2025**__          _____

24                                            UNITED STATES MAGISTRATE JUDGE

25

26

27   _____

28   [3] Because the Court has found that Defendant is entitled to judgment on the merits, the Court does not reach
     Defendant's alternative argument that he is entitled to qualified immunity.

22